[No. 14291-4-III.   Division Three.   February 6, 1996.]

DANA W. SCHMERER, *as Personal Representative, Respondent*, v. DONALD A. DARCY, ET AL., *Appellants*, JACQUELINE J. SCHMERER, *Respondent*.

500

*Michael L. Wolfe* and *Randall & Danskin, P.S.*, for appellants.

*Martin G. Weber* and *Lukins & Annis, P.S.*; and *Joseph P. Delay* and *Delay, Curran, Thompson & Pontarolo, P.S.*, for respondents.

SWEENEY, C.J. — Donald A. Darcy and Connie K. Darcy bought a home from Jacqueline J. Schmerer. The home was subject to a lien in favor of Ms. Schmerer's ex-

husband, Rodger W. Schmerer, as the result of a dissolution decree. The Darcys did not pay the lien. They did, however, tender the principal payment together with a portion of the interest to Mr. Schmerer. Mr. Schmerer rejected the tender, ignored requests to state a sum certain, and sued to foreclose on his lien. The trial court granted summary judgment foreclosing Mr. Schmerer's lien. The Darcys appeal. The primary issue presented is whether the Darcys' tender of payment was sufficient and either discharged the lien or stopped interest from accumulating. We hold that the Darcys' tender was insufficient because it did not include the full amount of interest due to Mr. Schmerer. Both the principal amount of the lien and the accumulated interest could have been ascertained since the lien was a matter of public record. We accordingly affirm the trial court's summary judgment in favor of both of the Schmerers.

## FACTS

The Schmerers ended their marriage on April 9, 1985. The decree of dissolution awarded Ms. Schmerer a home, but imposed a $30,500 lien in favor of Mr. Schmerer. The decree called for $11,500 of the lien to accrue interest at the rate of 12 percent per annum commencing on October 1, 1983, and payable as it accrued. The remaining balance, $19,000, did not accrue interest until the entire $30,500 became due. The principal balance, $30,500, together with any accrued interest, was payable on November 30, 1990. The decree was filed with the county clerk. Ms. Schmerer failed to pay any interest.

In the fall of 1989, Ms. Schmerer sold the property to the Darcys. Their contract was oral. The Darcys agreed to assume a $22,000 mortgage and pay Mr. Schmerer's lien. In October 1990, Ms. Schmerer placed a handwritten note in the Darcys' mailbox reminding them that the lien was due in November 1990. In January 1991, the Darcys hired

a lawyer to prepare a written document of conveyance from Ms. Schmerer and secure a copy of the Schmerers' dissolution decree. Unfortunately, the lawyer did nothing. The Darcys then hired a second lawyer. He bought a title report which accurately reflected the language of the dissolution decree awarding the lien. On August 4, 1992, the Darcys offered Mr. Schmerer $30,500 to release his lien. Mr. Schmerer did not respond. Mr. Schmerer died on September 11, 1992. His estate was substituted, but we will continue to refer both to him and the estate as Mr. Schmerer.

On September 18, 1992, the Darcys sued Ms. Schmerer for specific performance of their oral contract for the purchase of the property. Their complaint alleged that the consideration for the property consisted of the assumption of the mortgage and Mr. Schmerer's lien. The court granted specific performance and ordered Ms. Schmerer to convey title to the property to the Darcys. She did so, but noted on the deed that it was subject to a $30,500 lien.

On September 10, 1993, the Darcys sent Mr. Schmerer a check for the principal and three years' interest (the period during which the Darcys occupied the property). The Darcys said they were not responsible for interest accumulated before their possession. Mr. Schmerer rejected the tender because it did not include all accumulated interest. He also asked the Darcys to deposit the tendered funds in an interest-bearing account. On September 21, 1993, the Darcys refused his request and told Mr. Schmerer that their tender was good for a limited time. On December 22, 1993, Mr. Schmerer demanded payment of the lien in full.

On March 29, 1994, Mr. Schmerer sued to foreclose on his lien. The Darcys answered and filed a third-party action against Ms. Schmerer. All parties moved for summary judgment. The court entered a judgment foreclosing Mr. Schmerer's lien and dismissed the Darcys' third-party complaint against Ms. Schmerer.

The Darcys appeal. Ms. Schmerer also appeals the court's denial of her claim for attorney fees.

## DISCUSSION

### Standard of Review

■ Summary judgment is proper only when the pleadings, affidavits, depositions, and admissions on file demonstrate no genuine issue of material fact and the party bringing the claim is entitled to judgment as a matter of law. CR 56(c); *Kesinger v. Logan*, 113 Wn.2d 320, 325, 779 P.2d 263 (1989). All facts and reasonable inferences therefrom are to be viewed in the light most favorable to the nonmoving party, and summary judgment will be granted only if reasonable persons could reach but one conclusion. *Kesinger*, 113 Wn.2d at 325.

### The Darcys' Claims Against Mr. Schmerer

■■ Sufficiency of the Tender. The Darcys' tender was insufficient because it did not include all accrued interest. A tender is insufficient if it is not in the amount due and requires a complete release. It is rather a conditional tender. *Kirk v. Allemann*, 2 Wn. App. 183, 185, 467 P.2d 319 (1970). The Darcys' argument suggests they made several tenders. The record suggests otherwise. They made only one — on September 10, 1993. The others were proposals or propositions to offer money. *King v. O/S Nordic Maiden*, 587 F. Supp. 46, 48 (W.D. Wash. 1984) (debtor must evidence a willingness, accompanied by the ability and attempt to pay); *Catterson v. Ireland*, 60 Wash. 208, 213, 110 P. 1002 (1910) (a tender must include a production of money).

The Darcys' September 10, 1993 tender included interest for only the three years the Darcys were in possession. At first they maintained they should be liable only for interest accrued after they took possession of the property. Later they argued they did not know the payoff amount and, accordingly, could not make a tender of the

full amount due. Their arguments are not supported by this record.

■ First, in their specific performance action against Ms. Schmerer, the trial court found that the lien was an encumbrance on the property and not a personal obligation of Ms. Schmerer. It also found that the Darcys purchased the home with the intention that Ms. Schmerer could "walk away from the house with no further obligation." The court also found the date of the sale to be October 1989. These findings were made on August 4, 1993. Second, the principal amount of the lien and the rate at which interest would accrue was also a matter of public record as early as April 9, 1985. Third, on December 17, 1992, Ms. Schmerer answered interrogatories and said she had made no payments on the lien. The amount of the lien and the accrued interest could have been calculated with certainty. Any offer or tender which ignored this objective, easily ascertainable information was not an offer made in good faith.

The tender was then neither legally sufficient nor could it have been made in good faith.

■ Interference with a Business Relationship. The Darcys next argue that Mr. Schmerer interfered with their business relationship with Ms. Schmerer. The cause of action requires, among other things, intentional interference inducing or causing a breach or termination of a valid contractual relationship or business expectancy and resultant damage. *Cherberg v. Peoples Nat'l Bank*, 88 Wn.2d 595, 602, 564 P.2d 1137 (1977). The intentional interference denotes purposefully improper interference. *Birkenwald Distrib. Co. v. Heublein, Inc.*, 55 Wn. App. 1, 11, 776 P.2d 721 (1989). Intentional interference in this context requires an improper objective of harming the person or the use of wrongful means that in fact cause injury to the person's contractual or business relationships. *Pleas v. City of Seattle*, 112 Wn.2d 794, 804, 774 P.2d 1158 (1989).

■ The Darcys attempt to support this claim with evi-

dence which is, at best, innocuous. First is the correspondence between the attorneys for Mr. Schmerer and Ms. Schmerer. The exchange of correspondence is nothing more than inquiries by an interested party in the outcome of the suit by the Darcys against Ms. Schmerer. Next, they point to the deposition testimony of Ms. Schmerer. But even if this testimony is read in the light most favorable to the Darcys, it is an expression by Mr. Schmerer that the mortgage payments were late. Finally, the affidavit of the Darcys' lawyer merely references a statement by Mr. Schmerer that he believed the house was his and he had not decided what he was going to do with it. Simply put, that is not interference with a contract. Restatement (Second) of Torts § 773 (1977) (exercising in good faith one's legal interests is not improper interference).

■ RCW 61.16.030 Claim. RCW 61.16.020 provides in part that "[w]henever the amount due on any mortgage is paid, the mortgagee . . . shall, at the request of any person interested in the property mortgaged, execute an instrument in writing referring to the mortgage . . . and acknowledging satisfaction in full thereof." Failure to comply with that provision invokes the penalties of RCW 61.16.030: "If the mortgagee fails to acknowledge satisfaction of the mortgage as provided in RCW 61.16.020 sixty days from the date of such request or demand, the mortgagee shall forfeit and pay to the mortgagor damages and a reasonable attorneys' fee . . . ." But mortgages, whether chattel or real, do not have to be satisfied or released until the amount due has been paid. *Stusser v. Gottstein*, 178 Wash. 360, 369, 35 P.2d 5 (1934).

RCW 61.16.030 does not apply. A claim based on RCW 61.16.030 necessarily depends on satisfaction of the underlying obligation. Here, the underlying obligation has not been paid. *Stusser*, 178 Wash. at 369.

■ Implied Covenant of Good Faith. The Darcys next claim that Mr. Schmerer violated an implied covenant of good faith by refusing to provide a payoff balance despite repeated requests over two years. The claim is specious.

First, the lien on the property owned by the Darcys is not a contract. It is rather an encumbrance securing payment of a debt. *Sullins v. Sullins*, 65 Wn.2d 283, 285, 396 P.2d 886 (1964). While the agreement to pay the debt can constitute an agreement, the original lien was created through a nonconsensual judicial decree as opposed to a contract which requires consideration and mutuality of obligations between the contracting parties. *Pacific Cascade Corp. v. Nimmer*, 25 Wn. App. 552, 555-56, 608 P.2d 266, *review denied*, 93 Wn.2d 1030 (1980).

But even if the lien were consensual, the Darcys were never the intended beneficiaries. *Detweiler Bros., Inc. v. John Graham & Co.*, 412 F. Supp. 416, 419 (E.D. Wash. 1976) (holding third-party beneficiary contracts must evidence an intent that promisor assumes a direct obligation to third-party beneficiary). And the Darcys' unaccepted offers do not form a contract. *See, e.g., Schuehle v. Schuehle*, 21 Wn.2d 609, 614, 152 P.2d 608 (1944) (finding that several unaccepted offers and counter-offers for purchase price of property insufficient to form a contract). Without any contractual relationship between the parties, no violation of the duty of good faith occurred by Mr. Schmerer.

Equitable Defenses. The Darcys next urge that a number of their equitable defenses present genuine issues of material fact. These defenses assume that the amount due on the lien was not readily ascertainable by the Darcys, or that Mr. Schmerer intentionally avoided providing the payoff amount to the detriment of the Darcys and to the benefit of Ms. Schmerer. We have already discussed why neither assumption is correct.

Moreover, nothing in this record suggests Mr. Schmerer intentionally refused to provide the payoff amount. The only two requests prior to the trial court's decree in the action between Ms. Schmerer and the Darcys were on October 14, 1992, and May 19, 1993. The only contacts with Mr. Schmerer and his attorney other than the October 14, 1992 and May 19, 1993 letters were an August

4, 1992 letter, and an informal discovery telephone request on April 7, 1993 that was recorded in an April 20, 1993 letter. None of these inquiries asked for a payoff figure. Although there was no response to the October 14, 1992 letter, the Darcys' attorney admits that in response to the May 19, 1993 inquiry, Mr. Schmerer's attorney explained that he did not know the lien amount and could not provide him with a payoff demand. Considering these circumstances, the assertion that Mr. Schmerer was helping Ms. Schmerer in her action against the Darcys is an unreasonable inference.

The trial court correctly granted Mr. Schmerer's motion for summary judgment.

### The Darcys' Claims Against Ms. Schmerer

■ Misrepresentation. The Darcys contend that Ms. Schmerer misrepresented the status of the lien by not disclosing the accrued interest and the fact that she had made no payments. But this question was necessarily resolved in the Darcys' suit for specific performance. In that action, the court found that the lien was not a personal obligation of Ms. Schmerer and that the Darcys had agreed to pay it. Their claim is therefore barred by the doctrine of collateral estoppel. *Seattle-First Nat'l Bank v. Kawachi*, 91 Wn.2d 223, 225-26, 588 P.2d 725 (1978) (collateral estoppel precludes the relitigation of issues between the same parties, even though the claim or cause of action may be different). The court properly dismissed this cause of action.

■ Tortious Interference with a Business Relationship. The Darcys next argue that by purchasing the home subject to the lien, they had a business relationship with Mr. Schmerer, and that the correspondence produced during discovery raised material issues of fact as to whether Ms. Schmerer interfered with that contract. They are mistaken. There was no contractual relationship or business expectancy between the Darcys and Mr. Schmerer. A lien is not a contract but an encumbrance on property as

security for payment of a debt. *Sullins*, 65 Wn.2d at 285. Moreover, the exchange of letters the Darcys rely on reflects the concerns of Mr. Schmerer's attorney about the lien because of the litigation between Ms. Schmerer and the Darcys. The response by Ms. Schmerer simply details the defense she raised to the specific performance action and nothing more. That either letter approaches collusion or an intention by Ms. Schmerer to interfere with a business expectancy between the Darcys and Mr. Schmerer is unreasonable. *Hartley v. State*, 103 Wn.2d 768, 775-76, 698 P.2d 77 (1985) (if evidence is too incredible to be accepted, summary judgment is proper).

## Ms. Schmerer's Cross-Appeal

Attorney Fees Based on Frivolous Claims. RCW 4.84.185 provides for an award of attorney fees for meritless claims. *Suarez v. Newquist*, 70 Wn. App. 827, 832-33, 855 P.2d 1200 (1993). While many of the Darcys' causes of action are tenuous at best, the decision to award attorney fees is left to the discretion of the trial court. *Lockhart v. Greive*, 66 Wn. App. 735, 744, 834 P.2d 64 (1992).

The trial court's failure to award attorney fees is not an abuse of discretion. It apparently concluded that none of the claims were brought for purposes of delay, nuisance, spite or harassment. *Suarez*, 70 Wn. App. at 832-33 (no abuse of discretion when the claim was frivolous but suit was not initiated for purposes of harassment, delay, nuisance or spite).

Attorney Fees Based on RCW 4.84.250 and RCW 4.84.270. Ms. Schmerer also requests attorney fees based on RCW 4.84.250 and RCW 4.84.270 because she offered to settle prior to trial and the Darcys refused. RCW 4.84.250 allows a prevailing party in an action for damages where the amount pleaded is $10,000 or less to recover a reasonable amount for attorney fees. RCW 4.84.270 modifies this provision by allowing a defendant to recover if a plaintiff recovers nothing or if the recovery is the same or less

than the amount offered in settlement by the defendant. Ms. Schmerer is entitled to attorney fees, despite the lack of pleading an exact amount, if she had constructive knowledge that the amount of the claim was $10,000 or less. *Beckmann v. Spokane Transit Auth.*, 107 Wn.2d 785, 789-90, 733 P.2d 960 (1987).

Here, the third-party complaint by the Darcys is silent as to the exact amount of their claim. And Ms. Schmerer's attorney made an offer that complied with the requirements of RCW 4.84.250. The failure to plead an exact amount in the Darcys' third-party claim will not prevent the award of attorney fees under RCW 4.84.250 if there was actual notice, prior to trial, that the claim was $10,000 or less. Here, there was no such notice.

■ In their third-party complaint, the Darcys contend that they would incur damages to the extent Mr. Schmerer enforces the lien for more than $30,500, the costs plus expenses in defending the lawsuit, costs of applying for and obtaining a commitment for three loans, and increased costs of obtaining a loan because of the increase in interest rates. The Darcys also sent notice before trial to Ms. Schmerer's attorney telling him that the claim was in excess of $10,000. Ms. Schmerer had actual notice that the claim exceeded $10,000 and the court therefore properly denied fees on the basis of RCW 4.84.250.

■ Fees on Appeal. RAP 18.9 allows an appellate court on its own initiative or on motion of a party to order a party who files a frivolous appeal to pay terms or compensatory damages to any other party harmed by the action. RAP 18.9(a). Whether an appeal is frivolous depends on considerations established in *Streater v. White*, 26 Wn. App. 430, 613 P.2d 187, *review denied*, 94 Wn.2d 1014 (1980). These considerations include:

> (1) A civil appellant has a right to appeal under RAP 2.2; (2) all doubts as to whether the appeal is frivolous should be resolved in favor of the appellant; (3) the record should be considered as a whole; (4) an appeal that is affirmed simply because the arguments are rejected is not frivolous; (5) an ap-

peal is frivolous if there are no debatable issues upon which reasonable minds might differ, and it is so totally devoid of merit that there was no reasonable possibility of reversal.

*Streater*, 26 Wn. App. at 435. Where an appeal presents one arguably meritorious issue, the appeal will not be considered frivolous. *Rhinehart v. Seattle Times, Inc.*, 59 Wn. App. 332, 342, 798 P.2d 1155 (1990), *review denied*, 124 Wn.2d 1010 (1994).

The appeal is not frivolous.

The judgment of the trial court is affirmed.

MUNSON and THOMPSON, JJ., concur.

Reconsideration denied March 8, 1996.